## Gentner v. City of Philadelphia

*H. Mark Solomon* and *Walter W. Rabin*, for plaintiffs.

*David Berger*, City Solicitor, *Thomas A. Masterson*, Deputy City Solicitor, and *Edward J. Bradley*, Assistant City Solicitor, for defendant.

GOLD, J., June 5, 1959.—Plaintiffs, owners of three-story, multiple-occupancy dwellings in the City of Philadelphia, on behalf of themselves and similarly situated parties, seek to enjoin the enforcement of an ordinance promulgating certain amendments to the Fire Code of the City of Philadelphia and implementing regulations issued by the fire department which require the installation of additional fire protection equipment in such dwellings.[1] Following a hearing on plaintiffs' application for a preliminary injunction, which the parties agreed should be treated as a final hearing, the chancellor filed an adjudication upholding the ordinance and regulations and dismissing plaintiffs' complaint. We have before us plaintiffs' exceptions to this adjudication, which fall within the following categories.

---

[1] Taken together, the ordinance and regulations require the installation of automatic fire alarm systems, a fire extinguisher in each separate dwelling unit, and where required by the fire department, a fire resistant, collapsible ladder in each dwelling unit above the first floor.

1. Plaintiffs contend first that the ordinance and regulations are arbitrary, unreasonable, discriminatory and confiscatory in that they single out for special legislation multiple-occupancy dwellings of three stories in height and having a single means of egress, without a sufficient, logical basis for the classification. The findings of the chancellor, which are amply supported by the evidence, disclose that the single greatest source of fire deaths in Philadelphia dwelling structures is the multiple-occupancy dwelling of three stories or less having only one means of egress,[2] that most of these dwellings were originally private dwellings, not constructed of fire resistant materials or provided with adequate means of egress for use in fire emergencies, that the single stairwell which exists in most of these dwellings acts as a natural flue for fire and poisonous gases, resulting in the frequent asphyxiation of occupants on upper floors or the blocking of the only means of egress before such occupants receive warning of the existence of fire, that simple electric warning devices have not proved effective in giving sufficiently early warning of fire emergencies to the occupants of such dwellings and that the early warning which would be afforded by automatic alarm systems is virtually the only effective method of preventing the great loss of life which presently occurs in such dwellings.

The record also discloses that the cost of installing the required equipment is in no sense prohibitive, that approved equipment is readily available and compliance with the fire code and regulations is not unduly

---

[2] The chancellor found that although multiple family dwellings constitute approximately only seven percent of the total number of dwellings in the city, this seven percent accounts consistently and tragically for more than 50 percent of the total number of deaths by fire in any given year.

burdensome, that a reasonable basis exists for the classification of structures adopted by the regulations of the fire department and that procedures exist for obtaining variances from the provisions of the fire code in cases where, owing to extraordinary conditions, literal enforcement would result in unnecessary hardship. In view of this evidence, and of the failure of plaintiffs to establish by credible testimony that the requirements are unduly burdensome in relation to the object sought to be achieved, we believe the objections of plaintiffs to the ordinance and regulations on these grounds to be without merit.

2. Plaintiffs next contend that the amending ordinance is invalid because city council failed to follow the requirements of section 2-201 of the Philadelphia Home Rule Charter which prescribes the procedure to be followed by city council in introducing, considering and passing ordinances. Specifically, plaintiffs contend that a second public hearing should have been held before the bill in question could validly be passed because the original ordinance was amended in committee, following public hearing, in a manner which was substantial in relation to the legislation as a whole. In support of this interpretation of section 2-201 of the Philadelphia Home Rule Charter, which, by its terms, requires only one public hearing, plaintiffs rely entirely upon the case of Schultz v. Philadelphia, 385 Pa. 79 (1956), in which a majority of the Supreme Court affirmed[3] a decision of this court holding invalid an ordinance providing for the submission to the voters of certain proposed amendments to the Philadelphia Home Rule Charter. After careful consideration, we have concluded that the broad language of the majority opinion in that case is applicable only where amendments made in committee after hearing work changes in the original purpose of the legislation under consideration.

---

[3] For both procedural and constitutional reasons.

That the rule of the Schultz case, as so limited, is not applicable to the legislation presently before us is readily apparent. Prior to its amendment section 5-2204(1) (*b*) of the fire code required the installation of electric fire alarm systems in certain dwellings, subject to a limitation that manually operated systems might be employed under certain circumstances. Section 5-2204(1) (*d*) required one fire extinguisher or fire pail for each floor and for each 1,500 square feet of floor space. On November 7, 1957, Councilman Giordano introduced bill no. 1827, entitled, "An Ordinance Amending Title 5, 'Fire Code' of the Philadelphia Code, by changing the requirements concerning the installation of fire safety and extinguishing equipment in multiple occupancy dwellings, and changing the penalty provisions." As originally drawn, bill no. 1827 removed the limitation which permitted the use of manually operated alarm systems under certain circumstances. It deleted the provision in the fire code permitting the use of fire pails, giving lessors the option of placing fire extinguishers in the common hallways or in each of the separate dwelling units. Finally, bill no. 1827 added to the fire code a new subsection, 5-2204(1) (*g*), which required the installation of fire resistant collapsible ladders in all dwelling units above the first floor.

Following its introduction, bill no. 1827 was referred to a committee, considered at a public hearing, reported by the committee as amended, printed as reported, distributed to the members of the council and made available to the public, all as required by section 2-201(2) of the charter. Due notice of the public hearing and of the reporting was given by newspaper advertisement as required by section 2-201(5) of the charter. Also, the bill lay over for at least five days before the final vote was taken as required by section 2-201(4) of the

charter. Important amendments were made in committee as follows: Council modified bill no. 1827 by requiring automatic fire alarm systems instead of electric alarm systems. Council removed the optional feature regarding the placement of fire extinguishers by requiring the owner to place an extinguisher in each dwelling unit. Finally, council modified the provision concerning collapsible ladders by requiring their installation only "where required by the Fire Department." Unless these changes violated the prohibition set forth in section 2-201(3) of the charter, that "No bill shall be so altered or amended during its passage as to change its original purpose", the ordinance was introduced, considered and passed in strict compliance with the terms of the charter.[4]

We think it crystal clear that the original purpose of the ordinance was to strengthen the requirements of the fire code concerning fire protection equipment and that no change of purpose was involved in strengthening these requirements still further by committee amendments. In reliance upon the Schultz case, supra, plaintiffs contend that the ordinance is nevertheless invalid because the amendments were "substantial in relation to the legislation as a whole."[5] Under that test, as set forth in the Schultz case, plaintiffs contend that city council is empowered to make only "insignifi-

---

[4] It is interesting to note that the chancellor's findings of fact, upon which the foregoing history of this legislation is based, were not excepted to by plaintiffs.

[5] Plaintiffs made no objection to the change made with reference to fire resistant collapsible ladders. Actually, this change benefited plaintiffs by reserving an area of decision to the fire department as to whether such installation might be avoided after proper inspection. Here lies one of the fundamental weaknesses in plaintiffs' argument; namely, they call for a striking down only of that portion of the committee's amendments which is adverse to their propertied interests.

cant" changes; if "substantial" changes are made the bill must be readvertised and a second public hearing held.[6] While the broad language of the Schultz decision tends to support this contention, as to procedural defects, a careful examination of the Supreme Court opinion discloses that the court actually relied upon the reasons set forth in the opinion of this court, where it was clearly stated that the committee amendments to the ordinance involved in that case *changed the purpose of the original bill.*

Obviously, it was not the intention of the framers of the charter to prevent amendments to proposed ordinances. Indeed, if council were prohibited from making amendments as a result of the debate, proposals and suggestions arising from the public hearing, the very purpose of requiring such hearing would be thwarted. The fact that an amendment is substantial does not, in our judgment, invalidate the ordinance so long as its original purpose has not been altered.[7] A

[6] As we view the charter, an amended bill which violates the prohibition set forth in section 2-201 (3) must be reintroduced and the entire legislative process commenced de novo.

[7] Basically, the "substantial" changes to which plaintiffs object operate in the economic sphere, i.e., the added substantial cost to plaintiffs of installing the automatic fire alarm systems and additional fire extinguishers in their many multiple-occupancy dwellings. Clearly, this is not the test even if we read the Schultz decision literally. In our opinion, the changes effected by amendment in committee were not "substantial in relation to the legislation as a whole." Here, contrary to the Schultz case, there was no change of policy between the original and amended versions of bill no. 1827. Both were a valid exercise of the city's police power providing for the safety of a class of our citizenry which, as the statistics so dramatically prove, required such protection the most. Furthermore, the amended version of bill no. 1827 did not affect any classification of property owners except those originally affected under the initial version. Nevertheless, for reasons expressed in this opinion, we do not choose to base our decision solely upon the narrow rationale that the changes worked in committee were not "substantial in relation to the legislation as a whole."

careful examination of the charter confirms this conclusion. While section 2-201 expressly authorizes amendments after the required public hearing, nowhere do we find any distinction between amendments which are "insignificant" or those considered "substantial". The sole procedural prohibition concerning amendments to proposed ordinances, as we noted above, is succinctly stated in section 2-201(3): "No bill shall be so altered or amended during its passage as to change its original purpose." The object of this provision was aptly described by Carroll, P. J., in Gray v. City of Philadelphia, C. P. No. 2, Dec. term, 1956, no. 827 (1957), wherein he stated, at page 5: "What the framers of the Charter wanted to avoid was passage of *new* legislation which in fact is *totally different* from the ordinance advertised, under the guise of an amendment." (Italics supplied.)

When we examine the genesis of this prohibition, we find that it was taken intact from the Philadelphia City Charter Act of June 25, 1919, P. L. 581, art. XVI, sec. 6, 53 PS §12526.[8] Amazingly, our research reveals that prior to the Schultz decision, a period of 37 years from the passage of the Philadelphia City Charter Act of 1919, no challenge was ever made to amended ordinances of the City of Philadelphia in the courts of this Commonwealth. From this, it is apparent that until the Schultz holding, the city council, the bar of Philadelphia and all persons interested in councilmanic legislation read section 2-201 of the charter in the same manner as we presently view it, viz., that this section means literally what it says; namely, that an ordinance amended after the required public hearing shall not be struck down, thus defeating the will of the people

---

[8] See also article III, sec. 1, of the Pennsylvania Constitution.

speaking through their duly elected representatives, unless the amendment changes the *original purpose* of the bill.

Since we believe the test laid down in the Schultz case is proper only as applied to committee amendments involving changes of original purpose in legislation, that the test, while broadly phrased, was intended to be applied only to such changes and that an extension of the test to changes of substance which do not alter original purpose would be unwarranted in the extreme, we do not consider the Schultz case to be precedent for the proposition advanced by plaintiffs. We therefore hold that the ordinance in question here was passed in due compliance with all applicable procedural requirements of the Home Rule Charter.

3. Plaintiffs finally contend that they should not be bound to make the changes required by the ordinance because their buildings are now in conformity with the regulations of the fire department promulgated under section 5-1104 of the fire code. We think this argument to be improperly raised in this equitable injunctive proceeding. This is not the time to determine whether plaintiffs' multiple-occupancy dwellings comply with regulations of the fire department, regardless under which section of the fire code they were promulgated. Nevertheless, in order to clarify that part of the chancellor's adjudication which is slightly inconsistent with our present views and to bring this litigation to a final conclusion, we will decide the merits of plaintiffs' contention. Section 5-1104 of the fire code, prior to September 1958, provided that:

"Existing fire alarm systems which the Department finds satisfactorily provides for the protection of the persons in the building are acceptable for continued operation."

On September 23, 1958, this was amended to read as follows:

"Existing fire alarm systems which comply with the regulations of the Department shall be acceptable for continued operation."

Plaintiffs argue that they are in compliance with all regulations of the fire department promulgated under section 5-1104 and therefore cannot be compelled to install the automatic alarm system required by section 5-2204, as amended. On the other hand, the city contends that plaintiffs must conform with the regulations promulgated under section 5-2204.

The difficulty here arises from the fact that chapter 5-1100, entitled, "Fire Alarm Systems" and comprising sections 5-1101 to 5-1105, appears at first blush to be an attempt to cover fire alarm systems comprehensively in all types of buildings governed by the code. On the other hand, chapter 5-2200, entitled, "Multiple Occupancy Dwellings" and comprising sections 5-2201 to 2205, inclusive, contains in section 5-2204(*b*) a special provision with regard to fire alarm systems in multiple-occupancy dwellings as well as provisions for other types of fire protection equipment in such buildings. It seems to us quite clear that the specific provisions of section 5-2204(*b*) with regard to fire alarm systems and the regulations thereunder in multiple-occupancy dwellings must take precedence, with regard to such dwellings, over the provisions of chapter 5-1100 and regulations thereunder insofar as they are in conflict. Therefore, since plaintiffs are not in compliance with section 5-2204, as amended, and the regulations promulgated thereunder, it does not help that they are in compliance with the regulations under section 5-1104.

We are confirmed in this conclusion by the provisions of the other sections in chapter 5-1100, particularly the provision of section 5-1102. Section 5-1102 provides for separate types of fire alarm systems for

various kinds of buildings. Subsection 1 provides the requirements as to certain establishments having a sleeping capacity of 50 or more persons above the second floor. Subsection 2 provides requirements for academies, colleges and schools. Subsection 3 provides the requirements for certain types of institutions and office buildings, hotels, academies, colleges and school buildings. Nothing in section 5-1102 or in any other section in chapter 5-1100 provides for fire alarm systems in multiple-occupancy dwellings such as those owned by plaintiffs. Plaintiffs' buildings are not institutions, schools or colleges; they do not have sleeping capacities of 50 or more persons and they are not hotels six stories or more in height. Consequently, there is nothing anywhere in chapter 5-1100 to require fire alarm systems for them or for multiple-occupancy dwellings of the type covered by chapter 5-2200.

We are also confirmed in this by the action of council in inserting in section 5-2204 (1) (*b*) a requirement that alarm systems in multiple-occupancy dwellings be installed in accordance with Standards of the National Board of Fire Underwriters for Proprietary, Auxiliary and Local Systems, etc.: Pamphlet No. 72. If council had considered the provisions of chapter 5-1100 to be applicable to systems required by chapter 5-2200, it would not have included this provision, since section 5-1103 already set forth a similar requirement.

Plaintiffs' buildings are not in conformity with the code merely because they conform with the regulations promulgated under section 5-1104 when they are in violation of the regulations under section 5-2204. The fact that the department of licenses and inspections previously construed section 5-1104 as being applicable to the type of dwelling involved here does not prevent the fire department from correctly limiting its application to the types of structures which are specified in the code. The discussion in the adjudication of the chan-

cellor which is inconsistent with this interpretation and which treats as applicable to multiple-occupancy dwellings the provisions of chapter 5-1100 must be modified accordingly. In order to emphasize this we add to the chancellor's adjudication the following additional finding of fact:

14A. While plaintiffs are required by the terms of the regulations issued under section 5-2204(1)(b) to comply with the regulations promulgated under section 5-1104(1), the provisions of section 5-1104(1) of the fire code are not applicable to plaintiffs' dwelling and compliance with the regulations thereunder does not excuse them from complying with the regulations issued under section 5-2204(1)(b) of the fire code.

In concluding this opinion, we think it well to observe that the instant litigation points out with striking force the difficulties under which our city council must labor whenever there appears a real need for amending a bill during the course of its enactment. If the "original purpose" doctrine is not the prescribed formula, city council will always be in a legislative no man's land where it must retreat and reintroduce a specific bill or face litigation based on the "insignificant" versus "substantial" rule. In the instant case, the issue lies squarely between human lives and propertied interests. In a subsequent case, an important issue of home rule for Philadelphia may be raised; there is no end in sight unless the channel is cleared and the present and future city administrations are given a bright beacon light to follow in enacting legislation within the framework of the city charter.

For these reasons, the exceptions of plaintiffs are dismissed, the findings of fact of the chancellor, including no. 14, as modified herein, are adopted as the findings of fact of the court en banc and the chancellor's conclusions of law are sustained and affirmed. The decree nisi is made final.